## Jacob Dascomb & another, Executors *vs.* Levi Davis

A testator, after ordering all his debts to be paid, and giving certain legacies, devised one third part of all his estate, real and personal, of which he should 'die seized,' to C., to hold the same to her and her assigns forever; 'the same to be paid to her' by his executors, as soon after his decease, as should, in their judgment, be most for the advantage of all concerned in his estate : The remainder of his estate, real and personal, of which he should 'die seized,' he devised to his minor children in equal proportions, to hold to them and their assigns forever, after payment, by his executors, of all his debts and legacies, 'to be paid' by his executors, to said children, severally, as they should come of age, or so much thereof as should remain of principal and interest, after furnishing to them the means of support and education, till they should be qualified, on account of age, 'to receive said legacies': The testator then ordered, that his executors should manage his estate and effects, and dispose of all his lands, chattels, &c. for the purposes above mentioned, at such time and in such manner, as should be most likely, in their judgment, to do justice to all his creditors, and be for the greatest advantage of all concerned in his estate; and he also directed his executors, in order to increase the proceeds of his estate, to sell the wood, growing on his land, separate from and previous to the sale of the land on which it was growing, except so much of the young wood as should, in their judgment, add to the amount of his estate, by being sold with the land.

*Held,* that by the legal effect of the several provisions of the will, the executors had such a title and interest in the land of which the testator died seized, as authorized them to maintain an action of trespass *quare clausum fregit* for an illegal entry upon such land.

Where a testator devised land of which he obtained the right of possession by a judgment on a petition filed by him for partition, pursuant to *Sts.* 1783, *c.* 41, and 1786, *c.* 51, and after notice given, to all persons interested, of the pendency of such petition, it was held that he died seized of the land, although others, who claimed title thereto, occasionally entered upon it and cut wood thereon, after the judgment of partition.

Under *St.* 1839, *c.* 107, § 2, an executor, who is plaintiff in a suit in which he has no interest, except such as arises from his liability for costs and expenses of the suit, may be a witness in such suit, if there be first tendered to him such security for his liability for costs, as is sufficient, in the opinion of the court, to indemnify him on account thereof; and he need not also release his right to recover costs of the defendant in such suit, in order to enable him to testify.

TRESPASS for breaking and entering the plaintiffs' close in Andover, on the 24th of November 1840, and on divers other

days, and cutting down and carrying away trees there growing. The plaintiffs sued as executors of the last will of George French, which was executed in July, and was proved and allowed in October, 1837.

At the trial in the court of common pleas, before *Strong*, J. the plaintiffs offered to show that their testator died seized of the *locus in quo*, and that, by his will, they were entitled to maintain this action. For this purpose, the will was introduced By the will, the testator, after directing the payment of all his just debts, bequeathed to his executors, the plaintiffs, $ 1000 in trust, the income whereof they were to pay to his mother, during her life, and after her decease, to pay two thirds of said sum to his children, and one third thereof to Clarissa J. Chapman. The testator then devised and bequeathed to said C. J. Chapman one third part of all his estate, real and personal, of which he might " die seized," and which should remain after payment of his debts and of the $ 1000 aforesaid, " the same to be paid her by said executors," as soon after his decease, as should " in their judgment be most for the advantage of all concerned in the estate." The remainder of his estate, real and personal, of which he might " die seized," the testator devised and bequeathed to his children, in equal proportions, to be paid to them by his executors, when they should severally arrive at the age of 21 years, or so much thereof as should remain " of principal and interest, after furnishing them the means of their support and education, till they are qualified, on account of age, to receive the legacies herein named."

The next two clauses in the will were as follows : " *Fifth.* I will and order, that my executors manage my estate and effects, and dispose of all my lands, goods, chattels, rights and credits, for the purposes herein before mentioned, at such time, and in such manner, as shall be most likely, in their judgment, to do exact justice to all my creditors, and to be for the greatest advantage of all concerned in my estate. *Sixth.* I will and order my executors, in order to increase the proceeds of my estate, to sell the wood now growing on my woodland, separate from and previous to the sale of the land on which it grows, un-

Dascomb & another. Executors *v.* Davis.

less it be so much of the young wood as shall, in their judgment, add to the amount of my estate, by being sold with the land."

The judge ruled, that if the testator died seized of the close described in the plaintiffs' writ, they were authorized by the will to maintain this action.

The plaintiffs then introduced a copy of the record of a process in partition, from which it appeared that the testator presented to the court of common pleas, at March term 1828, a petition for partition of a tract of woodland in Andover, described by metes and bounds, in which petition he alleged that he was seized in fee of one undivided half of said tract, as tenant in common with some person or persons to him unknown; that an order was passed on said petition, directing the petitioner to give notice to all persons interested, (by publishing a copy of his petition, and of said order thereon, three weeks successively, in the Salem Gazette, a newspaper published in this county,) that they might appear at the next June term of said court, and show cause, &c. ; that notice was given, pursuant to said order, and that, at the next June term, no person appearing to show cause, the interlocutory judgment, that partition be made, was entered, and three freeholders in said county were appointed to make partition, who made return, at the following September term of said court, that they had set off to the petitioner one half, " for quality and quantity," of the land described in his petition, viz. four acres — describing the same by metes and bounds : Whereupon it was " considered by the court, that said return be accepted and recorded, as the law directs, and that the partition aforesaid be held firm and stable forever."

It was admitted by the defendant, that the land thus set off to the testator, on the aforesaid process of partition, included the close described in the plaintiffs' writ.

The plaintiffs then gave evidence of the cutting and carrying away of wood, as alleged in the writ. The defendant objected, that this evidence was not sufficient to entitle the plaintiffs to maintain their action, as they were not in possession. The judge ruled, that the judgment of partition vested the right of

possession in the testator, and that the plaintiffs could maintain the action, if the testator died seized.

The defendant then called his son, Levi Davis, jr. as a witness, who testified that the land, described in the plaintiffs' writ, adjoined the land of his father, and formerly belonged to his grandfather; that he never knew any one, except his father, to cut wood on said land; that wood had been cut there, as long as he could remember — he being 42 years old — " some years more, and some years less ; " that he never heard that French (the testator) claimed the land ; that in the year 1834, he (the witness) was at work for French, on an adjoining tract of land, and French told him not to go upon this land, because it was not settled for. He further testified that his father " claimed to own the land," and that he had, every year, cut wood on it, since the witness heard that " Mr. Kittredge gave Mr. Mears a deed of it," and that he " never knew French to be on the land, or to do any thing upon it."

Paschal Abbot, one of the plaintiffs, was then offered, on the part of the plaintiffs, as a witness, under *St.* 1839, *c.* 107, § 2. Sufficient security against his liability for costs was tendered to and accepted by him ; viz. a bond, with sufficient surety, to indemnify him from all costs which the defendant might recover. The defendant objected that this was not sufficient to entitle him to testify ; but the judge admitted him. He testified, that in the winter of 1827 or 1828, French, the testator, came to his counting room with Simeon Kittredge ; that French and Kittredge made a settlement, and that French paid Kittredge money ; that French took a deed out of his hat, which he (the witness) read, and found to be a deed of the land now in dispute ; that the witness owned land adjoining, and went upon it, with French, in the fall 1828, and after looking at it, went with French upon the land described in the writ in the present action ; that French then showed the witness this piece of land, and the witness showed French the bounds ; that French said he wished the witness to look at the land he (French) had bought of Kittredge, and to judge of the equity of the partition ; that the witness, four or five years afterwards, went upon the

same land with French, who supposed that some one had been cutting wood on it ; that French, at that time, spoke of it as his land, and said he intended to prosecute those who had cut the wood ; that the witness was again on the land with French, in 1836, about a year before he died, and that " he then spoke of it as his, and as a growing piece."

The judge ruled, that notwithstanding the testimony of Levi French, jr. taken in connexion with that of Paschal Abbot, George French had the right of possession, by virtue of the judgment of partition.

The defendant then put in evidence a deed from Simeon Kittredge to Joseph Mears, dated January 18th 1825 ; also a deed from Joseph Mears to William Ferguson, dated March 28th 1825.   These were deeds of warranty, and were both recorded on the 31st of March 1825.   The defendant also put in evidence a deed of quitclaim from William Ferguson to the defendant himself, acknowledged September 4th, and recorded November 27th, 1840.   The said deed from Kittredge to Mears was furnished to the defendant by the plaintiffs, in whose possession it was found.   The deed from Kittredge to Mears, and from Mears to Ferguson, purported to convey one undivided half of a tract of land which included that which is described in the plaintiffs' writ, and in each of those deeds the defendant was mentioned as the cotentant of the grantor, and as owning one undivided half of said land.

The plaintiffs contended, that the deed from Ferguson to the defendant was inoperative, because at the date thereof Ferguson was disseized by the aforesaid judgment in partition.

The judge ruled, that notwithstanding the said deeds, put in evidence by the defendant, the right of possession, so far as it respected the maintenance of this action, was in George French, the testator, at the time of his death, and that the plaintiffs, as his executors, could maintain the action.   The jury were accordingly directed that they should find a verdict for the plaintiffs, which was found accordingly.

The defendant alleged exceptions to the abovementioned rulings and decisions.

*N. J. Lord*, for the defendant.

*Hazen*, for the plaintiffs.

DEWEY, J. Several objections are taken to the ruling of the court of common pleas in this case. 1. That admitting the testator, George French, to have been the lawful owner and to have died seized of the premises upon which the trespasses are alleged to have been committed, yet that the plaintiffs, under the will of said French, derived no such title or interest in the lands devised, as would anthorize them to maintain the present action. Upon this point, the court are of opinion, that under the very broad authority, given by the will to the executors, to manage as well as dispose of all the real estate, and as the proceeds of two thirds of the same were to be retained by them until the children of the testator severally arrived at the age of twenty one, the executors acquired the right to maintain an action of trespass for any illegal entry upon the land, if the testator died seized and possessed thereof.

2. Did the judgment in partition, rendered on the petition of George French, at the court of common pleas, September term 1828, by which this land was set off to him in severalty, vest in him the possession, so that the same was transmissible by his will? We think such was the effect of the judgment in partition. This proceeding was instituted by virtue of *Sts.* 1783, *c.* 41, and 1786, *c.* 53, authorizing partition, upon petition of one of the tenants in common. The latter of these statutes provided the mode of settling any controverted facts between the parties, as to their interest in the premises. Such partition, legally made, is declared by the former of these statutes, § 1, to be valid to all intents and purposes. That it established the right of possession, as against all the cotenants, and also against one claiming to hold in severalty, was directly decided in the case of *Cook* v. *Allen*, 2 Mass. 470, to which case I refer for a very full and able consideration of this point. The Rev. Sts. *c.* 103, §§ 33, 38, seem to have gone further, and made such judgments in partition binding, not only on the right of possession, but the right of property also, as to all parties and privies to the judgment, including all persons who might by law have appeared and

Dascomb & another, Executors *v.* Davis.

answered to such petition ; saving only the right of one claiming to hold the premises in severalty, and who has not appeared in the petition for partition, to institute an action for the land so claimed by him. Nor do we percieve any thing in the other facts disclosed by the testimony, that defeated the right of possession acquired by virtue of the judgment in partition.

3. The remaining question, viz., whether Paschal Abbot was a competent witness in this case, is one of more difficulty and doubt. He was one of the plaintiffs in the action, and upon the ordinary common law rule applicable to the admission of testimony, he would have been an incompetent witness. If admissible at all, he is so by force of *St.* 1839, *c.* 107, § 2, which is in these words : " Any executor, administrator, guardian or trustee, who may be a party to any suit at law or in equity, having no interest therein, except such as arises from his liability for costs and expenses of suit, may be a witness, in such suit, to any matter known to him before he assumed the trust of his appointment ; provided he shall first release his right to recover costs in such suit, or shall receive, or have tendered to him, such security for his liability for costs, as in the opinion of the court before which the case is pending, shall be sufficient to indemnify him on account thereof." The precise question here is, whether enough was done to remove the disability which attached to the witness, by reason of his relation to the case, as a party. That the receipt of a bond, with surety, to indemnify the plaintiff against all cost which the defendant might recover, would not remove all pecuniary interest in the issue of the trial, must be quite obvious ; as in the event of a recovery, he would be entitled also, as plaintiff, to recover his taxable costs : Whereas if a judgment was rendered for the defendant, the plaintiff would re cover no costs. His interest arises from two sources ; first, he is interested in maintaining the action, as thereby he recovers costs ; and secondly, he is interested in maintaining the action, as upon the failure so to do he is liable to pay costs to the defendant. The bond tendered and accepted, in the present case, only removed this latter interest. It was a bond to indemnify him against all costs which the defendant might recover If

29 *

therefore the result of the question of the competency of the witness depended upon the fact whether all his interest had been removed, we should have no hesitation in saying that he was incompetent. This however is not, strictly, the inquiry ; but the question is, whether the statute has not, by force of its provisions, made him a competent witness, upon his being indemnified against his liability for costs to the defendant. Giving the statute a literal construction, such is obviously its effect. It provides two modes, by which the disqualification may be removed ; he may release his right to recover costs, *or* he may have tendered to him a bond to indemnify against costs. Should *or* be read *and*, in this statute ? Clearly it is necessary to read it so, if we would give it a construction which would remove all interest from the witness. But before adopting such reading of it, it must be made very apparent that it would then be in a form of expression that would effectually secure the object of the legislature. But thus to read it, would, in another aspect, defeat the very purposes of the act. The party, who may be executor or trustee, is to be a witness at the request of either party, upon compliance with the provisions of the statute ; but if *or* be read *and*, the other party can never remove the disability of the witness ; as it is the executor himself, who only can release his right to costs ; and therefore, in such case, all the party can do, is to tender a bond of indemnity for costs. The construction proposed is not, therefore, so manifestly within the design of the legislature, as to authorize us to adopt it ; and such being the case, we are brought back to the language of the statute, which, in its terms, permits the introduction of the testimony of the executor, upon having tendered to him such security for his liability to costs, as in the opinion of the court, before which the case is pending, shall be sufficient to indemnify him on account thereof.

Adopting this rule of construction of the statute, the witness was competent, and properly admitted. The result is, therefore, that the ruling of the court of common pleas was correct.

*Exceptions overruled.*